Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Bird, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br><br>Quell Pest Control LLC<br><br>Defendant. | Case No. 2:26-cv-02459-SMB<br><br><br>**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS COMPLAINT** |

**INTRODUCTION**

Defendant asks this Court to hold that telemarketing text messages are not actionable under the TCPA's Do Not Call provisions. That argument is contrary to controlling Ninth Circuit authority, contrary to the FCC's implementing regulations, and contrary to the growing body of decisions that have considered and rejected the same theory.

The Ninth Circuit recently reaffirmed that "a text message constitutes a call within the meaning of the TCPA" and expressly held that conclusion remains correct even in the absence of *Chevron* deference. *Howard v. Republican Nat'l Comm.,* 164 F.4th 1119, 1123–24 (9th Cir. 2026). Numerous courts have since applied that reasoning to claims brought under § 227(c), holding that telemarketing text messages are actionable under the TCPA's National Do Not Call provisions. *See, e.g., Taha v. Momentive Software, Inc.,* 2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026); *Wilson v. Medvidi,* 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025).

Defendant's contrary position would create an untenable result. The FCC's regulations promulgated under § 227(c) expressly regulate "telemarketing calls or text messages," yet Defendant contends consumers cannot enforce those regulations when the unlawful solicitation arrives by text message rather than voice call. Nothing in the TCPA's text, structure, purpose, or history supports that result.

Because Plaintiff plausibly alleges that Defendant repeatedly transmitted telemarketing text messages to a telephone number listed on the National Do Not Call Registry, Defendant's motion should be denied.

1

**BACKGROUND**

Plaintiff Daniel Bird brings this action under the Telephone Consumer Protection Act ("TCPA") after Defendant transmitted multiple unsolicited telemarketing text messages to his residential telephone number despite that number having been registered on the National Do Not Call Registry continuously since 2008. *ECF No. 1* ¶¶ 3, 17–20. Plaintiff alleges his number is used for residential purposes, is not associated with any business, and that he had no relationship with Defendant and never consented to receive advertisements from it. *Id.* ¶¶ 18, 21–23. The messages advertised Defendant's pest-control services and attempted to solicit Plaintiff to purchase those services. *Id.* ¶¶ 19–23. Based on those allegations, Plaintiff asserts a claim under 47 U.S.C. § 227(c)(5) on behalf of himself and a nationwide class consisting of persons whose residential telephone numbers were listed on the National Do Not Call Registry but nevertheless received more than one telephone solicitation from Defendant within a twelve-month period. *Id.* ¶¶ 24–44.

**ARGUMENT**

I.   **The Ninth Circuit Court of Appeals has Repeatedly Made Clear that Text Messages are Calls under the TCPA, and it did so again Earlier this Year.**

The TCPA authorizes the Federal Communications Commission ("FCC") to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," 47 U.S.C. § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list, § 227(c)(3)(F).

Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Taha v. Momentive Software, Inc.,* 2026 U.S. Dist. LEXIS 54376, *7-8 (C.D. Ca. March 11, 2026); *Esquivel v. Mona Lee, Inc.*, No. 25 Civ. 00607, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025); *Wilson v. Medvidi*, No. 25 Civ. 03996, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin.*, *LLC*, No. 25 Civ. 00376, 2025 WL 2029274, at *4–5 (D. Or. Jul. 21, 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly

inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Luckily for consumers nationwide, Defendant's arguments have been nearly uniformly rejected in this Circuit consistent with what the Ninth Circuit Court of Appeals held earlier this year with respect to text messages in *Howard v. Republican Nat'l Comm.*, 1164 F.4th 1119, 1121 (9th Cir. 2026) ("a 'text message' constitutes a 'call' within the meaning of the TCPA").

    **a. *Earlier this year, the Ninth Circuit Unequivocally Stated that a "text message" Constitutes a "call" within the meaning of the TCPA.***

Since *Satterfield*, no Court in the Ninth Circuit has dismissed a TCPA case holding that a text message is not a call. The argument is foreclosed. Indeed, in *Howard*, the Ninth Circuit reaffirmed *Satterfield* and held that, although *Satterfield* originally discussed Chevron deference, "the conclusion would be the same even in the absence of Chevron deference." 164 F.4th at 1123. The court then independently interpreted the TCPA and held that "a 'text message' constitutes a 'call' within the meaning of the TCPA." *Id.* at 1123–24.

Defendant's motion proceeds from the premise that *Satterfield* survives, if at all, only as a product of *Chevron* deference. *Howard* expressly rejected that premise. The Ninth Circuit acknowledged that *Satterfield* had originally discussed the FCC's interpretation, but then held that "the conclusion would be the same even in the absence of *Chevron* deference." *Howard*, 164 F.4th at 1123. The court then independently analyzed the statutory text and concluded that a text message remains a call under the TCPA as a matter of ordinary statutory interpretation. *Id.* at 1123–24.

Defendant's reliance on *Loper Bright* fails because *Howard* already conducted the de novo statutory analysis that Defendant contends is required. Howard already performed the exact analysis Defendant claims is required and reached the same conclusion *Satterfield* reached years earlier. Whatever force Defendant's *Loper Bright* arguments might have carried before *Howard*, they cannot overcome a Ninth Circuit decision expressly holding that the result remains unchanged under de novo review.

Defendant attempts to distinguish *Howard* on the ground that it arose under § 227(b), rather than § 227(c). That distinction has already been rejected by multiple courts, including in *Taha*:

> While both cases reached these decisions in the context of analyzing § 227(b) of the TCPA, rather than § 227(c)(5) at issue here, neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings. Both cases state that their holdings apply to "the TCPA," and that is how this Court interprets them.

> Defendant argues that the addition of the word "telephone" changes the textual analysis when it comes to § 227(c)(5). However, this argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or [an attempt] to get in communication with a

person by telephone"). To argue that the addition of the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition. Defendant argues that "[b]oth at [the inception of the TCPA] and now, 'telephone call' means only a telephonic voice transmission." Ironically, the Ninth Circuit already expressed how Congress would make such a limitation in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023), which is reference in *Howard*. In *Trim*, the Ninth Circuit held that the text messages at issue did not qualify under the TCPA because "because they did not include audible components" which contrasted with Congress's use of the word "voice" in the statute at issue. 76 F.4th at 1158, 1160-61 (analyzing "the disputed term—'voice'" in the context of 47 U.S.C. § 227(b)(1)(A)). Thus, had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase "voice call," rather than "telephone call."

*Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, at *7-*8 (C.D. Cal. Mar. 11, 2026) (cleaned up). The Southern District of New York reached the same conclusion, holding that § 227(c) applies to text messages because the phrase "telephone call" carries the same meaning throughout § 227, the FCC has consistently interpreted both provisions to include text messages, and appellate authority overwhelmingly treats text messages as calls. *Wilson v. Better Mortgage Corp.*, No. 25-cv-5503, 2025 WL 3493815, at *4–9 (S.D.N.Y. Dec. 5, 2025).

Contemporary dictionaries at the time the TCPA was enacted simply defined a "telephone call" as a "call" *Taha*, 2026 U.S. Dist. LEXIS 54376, at *7. For example, the 1991 Oxford Encyclopedic English Dictionary defines a "telephone call" simply as a "call," and defines "call" as "to communicate or converse with *by telephone* or radio." *See* "call," Oxford Encyclopedic English Dictionary 209 (2d ed. 1991). Under that definition, a "telephone call" is simply a communication made by telephone (or a radiotelephone, which a cell phone is), which plainly includes text messages sent from one telephone to another. That holding was not dependent on *Chevron* deference and

reflects the functional reality that text messages are a form of telephonic communication regulated by the statute. Defendant's argument that the modifier "telephone" somehow narrows the term "call" to exclude text messages and include voice calls only elevates semantics over substance and ignores the broader statutory context. Accordingly, whatever rhetorical distinction Defendant attempts to draw between § 227(b) and § 227(c), it cannot overcome controlling Ninth Circuit authority on the meaning of "call," and dismissal on that ground should be denied.

Defendant's final argument is that Congress's later use of "text message" in § 227(e) shows Congress understood "telephone call" elsewhere in the TCPA to exclude texts. On close examination, however, it cuts decisively the other way. Two points compound to defeat it.

*First*, § 227(e)(8) defines its terms "[f]or purposes of this subsection." 47 U.S.C. § 227(e)(8). That subsection-specific definition does not purport to limit the use of the word "call" elsewhere in § 227, including § 227(c). *See Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *7 (D. Conn. Mar. 31, 2026); *Rubin v. Staples, Inc.*, No. 2:25-15515 (WJM), 2026 WL 881651, at *6 (D.N.J. Mar. 31, 2026).

*Second*, and decisively, the 2018 amendments were enacted in a *Chevron* world. When Congress drafted § 227(e), the FCC's interpretation that the word "call" included text messages was not merely persuasive guidance, it was *binding* on the courts under *Chevron* and the provisions of the Hobbs Act. Under a pre-*Loper Bright* regime, the FCC had already conclusively interpreted "call" in the TCPA to include text messages, and had done so as early as 2003. *See* 18 FCC Rcd. 14014, 14115-16 (2003).

Against that backdrop, Congress's drafting choices in 2018 send the *opposite* signal from the inference the Defendant draws. Congress did not need to add "text message" to § 227(c) to bring texts within § 227(c)(5) because the FCC *already had done so*, and under *Chevron*, courts were bound to follow that interpretation. If Congress had *disagreed* with the FCC's reading that the term "call" encompassed text message calls, the natural and obvious move would have been to amend the statute to *reject* that binding interpretation. Congress did the opposite. It amended an adjacent subsection while expressly preserving FCC rules and orders. That is acceptance of the FCC's rulemaking. Judge Gettleman reached the same conclusion, explaining that Congress amended the TCPA in 2018 against the backdrop of settled FCC and judicial authority treating text messages as calls. Congress's decision not to disturb that settled interpretation reflects acceptance rather than rejection of it. *See Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *4 (N.D. Ill. Mar. 27, 2026).

The Supreme Court itself forecloses any contrary reading. *Loper Bright* itself expressly declined to "call into question prior cases that relied on the *Chevron* framework," explaining that the "holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite [our] change in interpretive methodology." 603 U.S. at 376. "Mere reliance on *Chevron* cannot constitute a special justification for overruling such a holding." *Id.* (cleaned up). The Ninth and Second Circuits have agreed that *Loper Bright* provides no basis for disregarding prior circuit precedent that had rested on *Chevron*-era deference of a challenged regulation. *Lopez v.*

8

*Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024); *Garcia Pinach v. Bondi*, 147 F.4th 117, 121 (2d Cir. 2025).

Indeed, in evaluating *Stockdale v. Skymount Prop. Group, LLC*, 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026), the same case that the Defendant cites for this proposition, the District of Arizona held about a month ago:

> In citing to *Stockdale* and urging this Court to accept its reasoning, Circle K failed to cite binding caselaw from this Circuit arriving at the opposite conclusion. *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026). In *Howard*, the Ninth Circuit Court of Appeals concluded that a "a 'text message' constitutes a 'call' within the meaning of the TCPA."6 *Id.* at 1123-24. Circle K acknowledges *Howard* for the first time in its Reply, arguing that Plaintiff's reliance on the case "is misplaced," and that Counts I and IV should be dismissed for other reasons "even assuming text messages could *potentially qualify* as 'calls' under the TCPA." (Doc. 15 at 3) (emphasis added). There is no question as to whether text messages are calls under the TCPA in this Circuit. Although Circle K's counsel seems determined to ignore it, settled law from the Ninth Circuit Court of Appeals establishes that a TCPA violation may arise from unsolicited text messages.

*D'Agostino v. Circle K Stores Inc.,* 2026 U.S. Dist. LEXIS 89449, *14-15 (D. Az. April 22, 2026).

The conclusion that text messages qualify as calls under the TCPA is not unique to the Ninth Circuit. Courts of Appeals across the country have either held or assumed that text messages fall within the statute's coverage. *See Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Dominguez v. Yahoo, Inc.,* 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("we have held that, under the TCPA, [calls] encompass[] text messages"); *Cranor v. 5 Star Nutrition, L.L.C.,* 998 F.3d 686,

688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (recognizing TCPA injury from unwanted text messages).

The Supreme Court has likewise treated the issue as settled. In *Campbell-Ewald Co. v. Gomez*, the Court stated that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call.'" 577 U.S. 153, 156 (2016). Although *Campbell-Ewald* arose under § 227(b), the Court's observation reflects the longstanding and widespread understanding that text messages are a form of call regulated by the TCPA. Defendant's position thus runs contrary not only to *Howard* and *Satterfield*, but also to decades of appellate authority treating text messages as calls for TCPA purposes.

The emerging consensus is unmistakable. *Howard* held that a text message constitutes a call under the TCPA even under *de novo* review after *Loper Bright*. *Taha* applied that holding to § 227(c)(5) and rejected the precise argument Defendant advances here. And *D'Agostino* recently recognized that, at least within the Ninth Circuit, there is "no question" that unsolicited text messages may give rise to TCPA liability. Defendant relies almost exclusively on a series of recent out-of-circuit district court decisions. Whatever persuasive value those decisions may have elsewhere, they cannot overcome binding Ninth Circuit authority in *Howard* and *Satterfield*, nor this Court's obligation to follow those decisions. This Court should therefore follow controlling Ninth Circuit precedent rather than a collection of nonbinding district court decisions from other jurisdictions.

**b. *Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text message calls.***

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added).

That definition plainly encompasses modern text message calls. As further explained below, the word "call" in the TCPA encompasses text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA."). That interpretation follows from "the ordinary, contemporary, and common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed "[a]ny notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990).[1] So a "message" can be spoken *or* written. More generally, the definition of "telephone solicitation" focuses not on a communication's form but whether it has a commercial purpose. *See, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025). So, Congress referred to "call or message" disjunctively in order to capture the broadest possible range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). And "a voice message or

---

[1] *See also, e.g.*, *Message*, Webster's New Collegiate Dictionary (9th ed. 1991) ("a communication in writing, in speech, by signals"); *Message*, Oxford English Dictionary (2d ed. 1989) ("an oral or written communication sent from one person to another").

11

a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). And, as discussed, in *Howard*, 164 F.4th, 1123–24, the Ninth Circuit reaffirmed *Satterfield's* central holding, even in the absence of *Chevron* deference.

Relatedly, Defendant's says that an entirely separate provision distinguishes between calls and text messages. It asserts that in 2018, Congress amended Section 227(e) and allegedly distinguished text messages from calls. As an initial matter, that reading discounts the fact that Congress explicitly directed that nothing in section 227(e) "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Consolidated Appropriations Act of 2018, 132 Stat. at 1094. That includes the judicial decisions and FCC rules and orders that made clear that "call" in section 227 includes "text messages." *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); *see, e.g.*, *Satterfield*, 569 F.3d at 954.

As Judge Gettleman explained, this very action by Congress is an example of statutory *stare decisis* in which Congress implicitly *endorsed* the prevailing view at the time, that text messages are calls. *Rabbitt*, 2026 WL 851279 at *3-4 (cleaned up). Other Courts have agreed. For example, the District of Connecticut recently held that "the legislative history of the 2018 Amendments contains no evidence that Congress discussed the impact of the proposed Amendments on § 277(c)(5) [sic] or considered the private right of action at all when it passed the 2018 TCPA Amendments." *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *8 (D. Conn. Mar. 31, 2026); *Newell v. Childrens Dental Health Assocs, LLC*, No. 2:25-cv-05238, ECF No. 25 (E.D. Pa. Apr. 6,

2026) ("Congress expressly addresses its concerns about "*caller* identification information" to both "voice" and "text" services. Thus, the face of § 227(e) further confirms our view that a "call" can implicate a voice conversation or a text conversation.").

### c. *Defendant's interpretation would sever § 227(c)(5) from the regulations it was enacted to enforce.*

Defendant's motion repeatedly focuses on the phrase "telephone call" in § 227(c)(5) while largely ignoring the remainder of the statutory scheme. But § 227(c)(5) does not create a freestanding prohibition. Rather, it creates a private right of action for a person who receives more than one telephone call "in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The regulations prescribed under subsection (c) expressly apply to text messages. The FCC's rules provide that the do-not-call requirements are applicable to persons making "telemarketing calls or text messages." 47 C.F.R. § 64.1200(e). Thus, the very regulations that Defendant allegedly violated expressly regulate telemarketing text messages.

Defendant's interpretation creates a statutory anomaly. Under Defendant's theory, telemarketing text messages may violate the FCC's regulations promulgated under § 227(c), but consumers would have no private remedy for those violations because the communications happened to be delivered by text rather than voice. Nothing in the statutory text suggests Congress intended such a peculiar result.

Indeed, Defendant's reading would render portions of the FCC's do-not-call regulations largely unenforceable by private litigants. Courts generally avoid

interpretations that create internal inconsistencies within a statutory scheme. See *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000) (statutes should be interpreted as a symmetrical and coherent regulatory scheme). The more natural reading is the one adopted by the FCC and by the growing majority of courts to consider the issue: where the regulations promulgated under § 227(c) expressly regulate telemarketing text messages, the private right of action Congress created to enforce those regulations likewise reaches telemarketing text messages.

The Supreme Court has repeatedly instructed that statutes must be interpreted as coherent regulatory schemes rather than by isolating individual words or phrases. *See King v. Burwell,* 576 U.S. 473, 492 (2015) ("A fair reading of legislation demands a fair understanding of the legislative plan."); *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 809 (1989) (statutory language must be read in context and not in isolation). Defendant's interpretation violates that principle. It focuses exclusively on the phrase "telephone call" in § 227(c)(5) while ignoring the regulations that subsection expressly authorizes and the private enforcement mechanism Congress created to enforce those regulations. The better reading is that § 227(c)(5) should be construed in harmony with the regulations promulgated under § 227(c), which expressly apply to telemarketing "calls or text messages." 47 C.F.R. § 64.1200(e).

### d. The plain meaning of the word "call" includes text messages

To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries.

14

*See United States v. Ezeta*, 752 F.3d 1182, 1185 (9th Cir. 2014) ("To determine a word's plain and ordinary meaning, we may refer to standard English language dictionaries.") Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

Defendant's dictionary analysis improperly isolates the word "telephone" from the phrase Congress actually used: "telephone call." The relevant question is not whether a telephone historically transmitted sound, but whether a text message constitutes a communication made by telephone. Howard and Satterfield answered that question in the affirmative. Defendant's approach also produces arbitrary results. Under its theory, the same smartphone would qualify as a telephone when used to place a voice call but somehow cease functioning as a telephone when used moments later to send a text message to the same recipient. Nothing in the statutory text supports such a distinction. As the Ninth Circuit recognized, the ordinary meaning of a call includes attempts to communicate with another person by telephone, and text messaging is one such method of communication. *Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954.

As noted by the *Taha* Court, the basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*,

15

*Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025). In this respect, the *Stockdale* court simply appears to have cherrypicked definitions from other dictionaries in support of its proposition while ignoring the vast majority of other dictionaries that defined a "telephone call" simply as a "call," which itself indicates no preference for vocal communication. "Although many people assume that the first sense listed in a dictionary is the 'main' sense, that is often quite untrue." *United States Postal Serv. v. Konan*, 146 S. Ct. 736, 745 (2026). The definitions the *Stockdale* Court pointed to were the oldest, not primary. And we "do not presume that Congress intended the *oldest* usage, but rather the ordinary one in" 1991, and contemporaneous evidence shows that Congress understood text-based telephone calls to be "calls" in 1991. *Id.*; *see* Section I.c, *supra*.

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247

16

(S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954))

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"). So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9.

## CONCLUSION

For decades, courts, the FCC, and Congress have operated on the understanding that text messages are calls under the TCPA. Earlier this year, the Ninth Circuit reaffirmed that principle in *Howard* and expressly held that the conclusion remains the same even after *Loper Bright*. Defendant's attempt to distinguish § 227(c) from the remainder of the TCPA has been repeatedly rejected by courts throughout the country and cannot be reconciled with the statute's text, structure, or purpose.

Dated:  July 14, 2026                                  Respectfully Submitted,

                                                                    */s/ Anthony Paronich*
                                                                    Anthony Paronich
                                                                    Email: anthony@paronichlaw.com
                                                                    PARONICH LAW, P.C.
                                                                    350 Lincoln Street, Suite 2400

Hingham, MA 02043
Telephone: (508) 221-1510
*Pro Hac Vice*