Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Bird, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Quell Pest Control LLC<br><br>Defendant. | Case No. 2:26-cv-02459-SMB<br><br>**PLAINTIFF'S OPPOSITION TO THE MOTION TO STRIKE CLASS ALLEGATIONS** |

**INTRODUCTION**

Defendant asks this Court to strike Plaintiff's class allegations before the parties have exchanged a single document or taken a single deposition. The motion does not contend that Plaintiff failed to state a claim under the Telephone Consumer Protection Act ("TCPA"). Instead, Defendant speculates that individualized issues concerning consent, established business relationships, residential telephone subscribers, third-party marketers, and other Rule 23 issues may arise during discovery. But Rule 12(f) does not permit courts to resolve hypothetical class certification disputes on an undeveloped record.

Indeed, this Cout recently rejected materially similar arguments in another TCPA National Do Not Call Registry case, holding that motions to strike class allegations are disfavored, that "the proper stage for fine-tuning the class definition is certification, not pleading," and that whether a proposed class can ultimately be certified "remains a question for a later motion." *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *2–3, *10–11 (D. Ariz. Mar. 13, 2024) (Brnovich, J.). The same result should follow here. Because Defendant has not shown from the face of the Complaint that Plaintiff's proposed class is facially incapable of certification, its motion should be denied.

**BACKGROUND**

Plaintiff Daniel Bird brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), after Defendant transmitted multiple unsolicited telemarketing text messages to Plaintiff's residential telephone

number despite that number having been listed on the National Do Not Call Registry for more than thirty-one days. Plaintiff alleges that his telephone number has been listed on the National Do Not Call Registry continuously since 2008, that he uses the number for residential purposes, that he never consented to receive Defendant's telemarketing messages, and that he had no established business relationship with Defendant. *ECF No. 1* ¶¶ 3, 17–23. Plaintiff seeks to represent a nationwide class defined as:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint. *Id.* ¶ 26.

Defendant now moves to strike those class allegations prior to discovery.

## ARGUMENT

**I.    The Class Allegations Should be Addressed on a Full Record, not Determined Prior to any Discovery.**

As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

A motion to strike is generally disfavored and should only be granted if "the matter to be stricken clearly could have no possible bearing on the subject of the

litigation," but if "there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013). "A decision to grant a motion to strike class allegations . . . is the functional equivalent of denying a motion to certify a case as a class action." *Bates v. Bankers Life & Casualty Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017). Striking class allegations prior to a formal certification motion is generally disfavored because the factual record is usually undeveloped. *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (stating "it is in fact rare to [strike class allegations] in advance of a motion for class certification," and holding "it is premature to determine if this matter should proceed as a class action" because discovery has not begun); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014) (declining to consider the adequacy of class allegations on a motion to strike).

Indeed, this very Court recently denied a motion to strike TCPA class allegations raising many of the same objections asserted here, explaining that "motions to strike class allegations are disfavored because a motion for class certification is the more appropriate vehicle to consider class issues," and that a defendant must show from the face of the complaint that no class can be certified. *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *2-*3 (D. Ariz. Mar. 13, 2024) (Brnovich, J.).

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg.*

3

*LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at \*5 (N.D. Ala. Aug. 23, 2018). A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at \*8 (N.D. Cal. June 15, 2015). Contrary to what Defendant argues, to determine class membership in this case, the Court will ask the following series of objective, factual questions:

- Were those messages sent by Defendant or by a vendor or other entity acting on Defendant's behalf?
- Were the messages sent to residential telephone numbers?
- Were those telephone numbers listed on the National Do Not Call Registry for at least 31 days before the messages were sent?
- Did the recipient receive more than one telemarketing text message within a twelve-month period?
- Did Defendant contend that any recipients provided prior express invitation or permission through the same policies, procedures, and records that Defendant contends apply to Plaintiff?
- Were Defendant's telemarketing practices uniform across the proposed class?

*See id*. at \*8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

Uniform calling campaigns, centralized consent and opt-out records, and Do Not Call scrubbing procedures are common forms of proof that regularly drive Rule 23 analysis in TCPA litigation. Whether those forms of evidence demonstrate commonality and predominance can only be determined after discovery, not at the pleading stage. As the Supreme Court has explained, class certification is an evidentiary determination that "may

4

require the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up).

Each of Defendant's speculative reasons for striking the class allegations mirrors arguments Judge Brnovich rejected in *Abrahamian*, where the Court concluded that the proposed TCPA class was not facially uncertifiable and held that whether the class could ultimately be certified "remains a question for a later motion." *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *10 (D. Ariz. Mar. 13, 2024) (Brnovich, J.).

## I.      The Class is Not Overly Broad.

Before any discovery has taken place, Defendant claims that Plaintiff's class allegations should be stricken and that no court could ever certify a case under the TCPA's National Do Not Call Registry provision because the determination of whether a number is residential would need to be made on a case-by-case basis. Luckily for consumers bombarded with unwanted telemarketing calls despite their numbers being registered on the National Do Not Call Registry, this is not the case as the majority of courts to address this issue at the pleadings stage have found arguments like Defendant's argument to be premature at best.

### A. There is no Requirement in the TCPA that Individuals Personally Register their Telephone Number on the Do Not Call Registry to have a Claim.

The provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a

holding would also run afoul of the 2003 TCPA Order, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim and as a result, cannot be a basis to strike class allegations prior to any discovery.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally

authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023).

*Rombough* was most notably rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier* court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). The *Callier* Court is far from alone. *See e.g. Murch v. GPS Cap. Mkts., LLC,* 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025) ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."). Indeed, this Court likewise rejected *Rombough*, explaining that although the regulation refers to the person who registered the number, it also requires registrations to be honored "indefinitely," meaning protection follows the telephone

number even when it changes hands. *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *4-*6 (D. Ariz. Mar. 13, 2024).

Even if Defendant were correct (it is not), that would not justify striking the class allegations. At most, Defendant identifies a potential dispute concerning whether a subset of putative class members satisfy one aspect of the governing regulation. Such questions are routinely addressed through class discovery and, if necessary, refinement of the class definition at certification. They are not grounds for striking an entire class action at the pleading stage.

Defendant's reliance on *Klassen* is particularly misplaced. Far from striking the class allegations, the court simply refined the proposed class definition at the certification stage after discovery. *Klassen* therefore illustrates the opposite of Defendant's argument—it demonstrates that any perceived issue with class wording is addressed through Rule 23, not by striking the complaint before discovery.

The policy consequences of Defendant's rule underscore its untenability. Millions of Americans change phone numbers every year. If Defendant's theory were correct, each consumer inheriting a number that had already been placed on the Registry would lose their protections. Telemarketers could then flood those numbers with impunity, despite Congress's intent to stop unwanted solicitations. Nothing in the statute, regulations, or case law supports this loophole, and this Court should not create one.

**B. The Potential Presence of an Affirmative Defense is not a Basis to Strike Class Allegations.**

8

Defendant's argument focuses on two affirmative defenses of consent or established business relationship (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action.

Defendant's standard is inconsistent with the law of consent in TCPA matters such as this one. Courts around the nation have held that TCPA consent issues are not problematic from a class certification perspective, particularly when there are potentially uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). Fortunately for consumers bombarded with illegal telemarketing calls, it is not enough for a telemarketer to allege consent, it must prove it. *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 925 (9th Cir. 2018) ("Express consent is an affirmative defense to a claim brought under a provision of the Telephone Consumer Protection Act of 1991 (TCPA) dealing with unsolicited telephone calls, and that the defendant bears the burden of proving such consent."). What's more, merely mentioning that discovery will reveal that one has an affirmative defense to some class members' claims is insufficient to strike class allegations, as appellate courts have ruled in other TCPA cases. *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a

finding of predominance").

Plaintiff's class is not overbroad merely because of a purported defense of consent to some potential class members under the TCPA. Even at the *class certification* stage, evidence of a defense as to some prospective class members does not render a class overbroad if the plaintiff demonstrates a means of ultimately excluding consumers that are subject to the defense from the class. *True Health*, 896 F.3d at 932-33 (9th Cir. 2018) (predominance satisfied in TCPA case where "the record shows . . . little or no variation" in the forms used to obtain consent). Moreover, discovery can be used to identify which telephone numbers that were called had provided consent and any other class member identification issues. *See, e.g., Mey v. Frontier Communications Corp.*, No. 13-cv-01191-MPS, slip op. (ECF 102) (D. Ct. 2015); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018).

As another Court held in a TCPA case late last year:

> it is not impossible to certify a TCPA class with a definition that does not expressly exclude telecommunication recipients who "solicited or consented to receiving the challenged" communications. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1123-26 (6th Cir. 2016). Indeed, discovery could reveal "a class-wide absence of consent," *id.* at 1125, which would ultimately moot Defendant's consent concerns. In other words, further "factual development" could alter the certification analysis, which counsels heavily against striking Plaintiff's class allegations at the pleading stage.

*Hubble v. LoanDepot.Com, LLC*, 2025 U.S. Dist. LEXIS 186864, *8-9 (E.D. Mich. Sep. 23, 2025).

Defendant's established-business-relationship argument fares no better. Like consent, the existence of an established business relationship is a defense that turns on Defendant's own records and practices. Whether any putative class member had such a relationship with Defendant—and whether Defendant can prove that relationship under the TCPA—is a merits issue that cannot be resolved from the face of the Complaint. The speculative possibility that Defendant may ultimately identify consumers with whom it had an established business relationship does not render Plaintiff's proposed class facially uncertifiable.

Plaintiff's proposed class definition is also not a "fail-safe" class. A fail-safe class is one that defines membership by reference to the ultimate merits of liability—for example, limiting the class to "those who received unlawful calls without consent." The Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014).

The cases Defendant relies on to argue that individualized consent issues *may* provide a basis to deny class certification were largely all decided on a full evidentiary record at class certification, not at the pleadings stage. *See e.g. Jamison v. First Credit*

*Servs.,* No. 12 C 4415, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013) (denying certification of TCPA class after discovery); *Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) (same); *Balthazor v. Cent. Credit Servs., Inc.,* No. 10-62435-CIV, 2012 WL 6725872, at *5 (S.D. Fla. Dec. 27, 2012) (same).

Defendant's reliance on *Barnes* and *Brown* is also misplaced. In *Barnes*, the plaintiff proposed an extraordinarily broad class consisting of essentially every person in the United States who had ever received any telephone call from Coca-Cola, with no meaningful temporal limitation and no limitation to prerecorded, telemarketing, or otherwise actionable calls. *See Barnes v. Coca-Cola Co.,* 2025 U.S. Dist. LEXIS 66248, at *12–13 (E.D. Cal. Apr. 4, 2025). The Court struck that facially implausible class because it attempted to sweep in virtually every call, including plainly non-actionable ones. *Id*. Just as importantly, the court granted leave to amend. *Id*. at *13. Plaintiff's proposed class here is much narrower and are tied to specific alleged conduct: repeated telemarketing calls or texts within a twelve-month period, or commercial text messages sent during the class period. This case therefore does not present the sort of "every single call" class rejected in *Barnes*.

*Brown* is likewise distinguishable. There, the court first held that the plaintiff failed to plausibly allege that the defendant made the calls or that any agency relationship existed, and then concluded the plaintiff had not shown she was even a member of her own proposed class. *See Brown v. Nano Hearing Tech Opco, LLC*, 2024 U.S. Dist. LEXIS 120371, at *6–24 (S.D. Cal. July 9, 2024).No comparable pleading defect exists here. Plaintiff expressly alleges that he received multiple telemarketing text messages from Quell

in 2026, reproduces the challenged messages in the Complaint, and alleges that those messages advertised Quell's pest-control services. *ECF No. 1* ¶¶ 19–23. Plaintiff further alleges that he had no relationship with Quell and had never provided his telephone number or consented to receive its advertisements. *Id.* ¶¶ 21–23. Thus, unlike in *Brown*, Plaintiff has alleged that he personally received the communications underlying the asserted claim and falls within the proposed class definition. Whether Quell used an employee, vendor, or other third party to transmit some or all of the messages is a factual issue appropriately addressed through discovery, not a basis to strike the class allegations at the pleading stage. And, as in *Barnes*, the court in *Brown* granted leave to amend rather than holding that class treatment was impossible as a matter of law. *Brown*, 2024 U.S. Dist. LEXIS 120371, at *24.

Defendant's consent argument is premature because it depends on speculation about defenses that may or may not exist and that, if they do exist, may or may not present individualized issues. Nothing on the face of the Complaint establishes that consent must be resolved through person-by-person mini-trials, or that Defendant's asserted affirmative defenses render the proposed classes incapable of certification. Indeed, the opposite may prove true. Discovery may reveal that Defendants relied on centralized records, uniform lead-generation sources, standardized web forms, common scripts, or consistent telemarketing procedures such that the existence or non-existence of consent can be assessed through common proof. It may also reveal that Defendants lacked compliant consent records altogether.

13

At this stage, however, the Court does not know, because no class discovery has occurred. That is precisely why courts have repeatedly held that speculation about possible consent by some putative class members is not a basis to strike TCPA class allegations on the pleadings. *See Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1065, 1067 (D. Or. 2014) ("Since the face of the [] Complaint does not reveal that [defendant] had express consent before it called cell phones, [defendant]'s speculation that some members of the Cell Phone Class may have given their express consent is not sufficient to strike that class action allegation for lack of standing . . . . This is not a matter that can be resolved from the face of the [] Complaint and, thus, is not a basis for striking those class allegations.").

This Court likewise rejected substantially similar arguments that consent and established business relationships rendered a TCPA DNC class facially overbroad, holding that such issues are premature because "[c]omprehensive briefing of the issues surrounding the proposed class are not before the Court and it is premature to address the appropriateness of its scope." *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *10-*11 (D. Ariz. Mar. 13, 2024) (Brnovich, J.).

Accordingly, Defendant has not shown from the face of the Complaint that Plaintiff's proposed class is facially uncertifiable. Rather, as Judge Brnovich held in *Abrahamian*, these are precisely the types of issues that should be addressed through Rule 23 proceedings on a developed factual record, not on a motion to strike filed before any discovery has occurred.

14

**C. The Phrases "or a Third Party Acting on Defendant's Behalf," "Telephone Solicitation," and "Residential Telephone Subscriber" Do Not Render the Class Definition Unascertainable.**

Defendant's remaining objections to the phrases "telephone solicitation," "residential telephone subscriber," and "acting on Defendant's behalf" similarly concern, at most, the wording or scope of the proposed class definition. As Judge Brnovich recognized in *Abrahamian*, however, "the proper stage for fine-tuning the class definition is certification, not pleading." *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *10 (D. Ariz. Mar. 13, 2024) (Brnovich, J.). Even if the Court ultimately concludes that any aspect of the proposed class definition should be clarified or refined, that provides no basis to strike the class allegations before discovery has occurred.

Each of these issues refers to an objective factual issue that can be resolved through discovery and common proof. Defendant's own records, vendor agreements, marketing contracts, text messaging platforms, campaign records, and communications with third-party marketers will identify whether the challenged text messages were transmitted directly by Quell or by an entity acting on Quell's behalf. Likewise, the content of the challenged text messages will determine whether they constituted "telephone solicitations," and the nature and use of the called telephone numbers will determine whether they were residential telephone numbers. None of those inquiries requires the Court to strike the class allegations before discovery.

Nor is there anything novel or impermissibly vague about the phrase "acting on Defendant's behalf." Courts routinely certify TCPA classes asserting direct and vicarious liability based upon telemarketing conducted by third-party vendors or agents. Whether

15

those entities acted on a defendant's behalf presents a common question capable of classwide resolution because the answer turns on the defendant's relationships with those entities—not on individualized inquiries into each class member. See, e.g., *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) (certifying TCPA claims where whether the defendant was vicariously liable for calls placed by a contracted entity presented a common question).

Similarly, Defendant's objections to the use of the terms "telephone solicitation" and "residential telephone subscriber" provide no basis to strike the class allegations. Those are statutory and regulatory terms that distinguish marketing communications from informational communications and residential telephone numbers from business telephone numbers. They are not vague or inherently individualized, nor do they transform the proposed class into a fail-safe class. To the contrary, they are objective concepts routinely applied by courts adjudicating TCPA claims. Whether a text message advertises the commercial availability of Defendant's goods or services and whether a telephone number is used for residential purposes are factual questions susceptible to common proof and are appropriately addressed after discovery.

Indeed, Plaintiff included the phrase "or a third party acting on Defendant's behalf" precisely because, before discovery, Plaintiff cannot know whether Quell transmitted every challenged text message itself or instead utilized one or more outside vendors or text messaging platforms to conduct its telemarketing campaign. Discovery will answer that question. Likewise, discovery will reveal the nature of the challenged communications, the identity of the sending entities, and the records Quell maintained

regarding the telephone numbers it contacted. If discovery ultimately demonstrates that refinement of the class definition is appropriate, Rule 23 permits the Court to modify the class definition accordingly. That possibility, however, provides no basis to strike the class allegations at the pleading stage.

## CONCLUSION

Defendant has not shown that Plaintiff's proposed class is facially uncertifiable or that no amount of discovery could permit certification under Rule 23. Instead, Defendant asks the Court to resolve disputed factual issues, speculate about affirmative defenses, and refine the proposed class definition before discovery has even begun. That is precisely the approach Judge Brnovich rejected in *Abrahamian*. Because any issues concerning consent, established business relationships, the National Do Not Call Registry, third-party marketers, or the wording of the class definition are properly addressed on a developed factual record at class certification, Defendant's Motion to Strike Class Allegations should be denied in its entirety.

Dated: July 14, 2026                        Respectfully Submitted,

                                            */s/ Anthony Paronich*
                                            Anthony Paronich
                                            Email: anthony@paronichlaw.com
                                            PARONICH LAW, P.C.
                                            350 Lincoln Street, Suite 2400
                                            Hingham, MA 02043
                                            Telephone: (508) 221-1510
                                            *Pro Hac Vice*

17